# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CRAIG OSBURN,

    Plaintiff,

v.

TRINITY HEALTH CORPORATION,

    Defendants.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorney for Plaintiff*
340 Beakes Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

---

## ORIGINAL COMPLAINT AND JURY DEMAND

NOW COME Plaintiff Craig Osburn ("Plaintiff"), by and through the undersigned attorneys, and state the following:

### INTRODUCTION

1. Craig Osburn was terminated by Defendant after requesting medical and religious accommodation to be exempt from Defendant's COVID-19 vaccine mandate. Mr. Osburn initially submitted a medical accommodation request, which included the contact information of his treating physicians. Defendant swiftly denied this request without contacting these physicians or engaging in any

1

interactive process with Mr. Osburn. After a subsequent medical leave, Mr. Osburn, an ordained minister, submitted a religious accommodation request as his sincerely held religious beliefs constrain him from receiving the vaccine. Defendant denied this request, and Mr. Osburn was then forced either abandon his religious accommodation beliefs and receive the vaccine or be terminated. Despite the Equal Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance," Defendant did the opposite. Defendant terminated Mr. Osburn based on Defendant's subjective standard of religiosity.

## PARTIES, JURISDICTION, AND VENUE

2. Craig Osburn resides in Tecumseh, Michigan.

3. Defendant Trinity Health Corporation is a domestic for-profit corporation incorporated in Michigan.

4. The Eastern District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA") claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Defendant is

incorporated and where the incidents described in this Complaint took place.

6. Plaintiff received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission ("EEOC") on March 1, 2023.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

7. Defendant announced its COVID-19 vaccination mandate on July 8, 2021.

8. The deadline for employees to receive the first dose of the vaccine was September 21, 2021.

9. The employees were to submit exemption requests or proof of vaccination by August 20, 2021.

### Plaintiff's Medical Accommodation Request

10. On August 2, 2021, Plaintiff submitted a medical accommodation request which included contact information for his medical provider, Dr. Daniel Cahill.

11. Three days later, Plaintiff submitted another request providing contact information for Dr. Dennis Cousino.

12. Plaintiff's doctors informed Defendant that Plaintiff previously suffered a myocardial infarction, which contraindicated vaccination due to the cardiac side effects reported following vaccination, particularly in male patients.

Matthew E. Oster et al., *Myocarditis Cases Reported After mRNA-Based COVID-19 Vaccination in the US From December 2020 to August 2021*, J. AM. MED. ASS'N (2022).

13. Defendant never contacted Plaintiff's treating physicians and instead denied his medical accommodation request on September 19, 2021 without explanation.

14. Defendant failed to engage Plaintiff in any interactive process during the six weeks in which Plaintiff waited for an answer.

15. Plaintiff soon fell seriously ill and was forced to take medical leave for the next four months, from October 10, 2021 until February 15, 2022.

**Plaintiff's Religious Accommodation Request**

16. As soon as Plaintiff recovered enough to do so, he promptly submitted a religus accommodation request illustrating his religious beliefs on February 17, 2022.

17. In his request, Plaintiff stated, in pertinent part:

> The body is the temple of the Holy Spirit and as such, should not be used for medical experimentation … Also, it is against my belief to use recombinant RNA, from aborted fetal cell line tissue because of the sanctity of life and the Law of the Old Testament.

18. Plaintiff's religious objections to the vaccine were straightforward and similar to those accepted by Defendant.

19. Nevertheless, Plaintiff received an email the following day from Mr.

4

Sharrard, informing him that "colleagues [were] no longer able" to submit exemptions.

20. Defendant relied upon an arbitrary deadline to deny Plaintiff's religious accommodation request.

21. Defendant ultimately terminated Plaintiff's employment.

22. Once again, Defendant failed to engage in the requisite interactive process with Plaintiff.

23. Under the law, religious practices "*include moral or ethical beliefs as to what is right and wrong* which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1.

24. Defendant assumed insincerity when the opposite should have been true – see Guidance, *supra* ("*[T]he employer should ordinarily assume* that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance.")

25. The fact that an employee submits to some vaccines but not others in no way negates the sincerity of his or her beliefs. See *id.* ("[E]mployees need not be scrupulous in their observance."); *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981) (holding that religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others" to merit protection).

26. "If the employer denies the employee's proposed accommodation, the

5

employer should explain to the employee why the preferred accommodation is not being granted." *Id*.

27. Defendant did not explain why it could not accommodate Plaintiff.

28. Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965). Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

29. Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986). "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business." *Id.*

30. Defendant's accommodation process was arbitrary.

31. Defendant did not explore available reasonable alternatives to the vaccine.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

32. The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

33. The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without

6

incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir. 1978).

34. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

35. Here, Defendant cannot satisfy its burden of proving undue hardship because Plaintiff is a remote employee.

36. Defendant's allegations are based in religious animus rather than science.

37. Plaintiff was more than willing to comply with all safety protocols.

38. Any allegation of undue hardship lacks scientific backing and, in fact, directly contravene scientific evidence supporting the effectiveness of practices such as handwashing and wearing respirators in preventing infection and death. Stella Talic et al., *Effectiveness of public health measures in reducing the incidence of covid-19, SARS-CoV-2 transmission, and covid-19 mortality: systematic review and meta-analysis*, Brit. Med. J (2021).

## COUNT I
## Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
## RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE

39. Plaintiff restates the foregoing paragraphs as set forth fully herein.

40. Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

41. Plaintiff can establish *prima facie* cases of discrimination by showing (1) she holds sincere religious beliefs that conflict with an employment requirement; (2) she informed her employer of same; and (3) she was disciplined for failing to comply with the employment requirement." *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

42. Plaintiff holds sincere religious beliefs that conflict with Defendant's vaccine mandate.

43. Plaintiff informed Defendant of the same.

44. Plaintiff was disciplined for failing to comply with the vaccine mandate.

45. Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

46. Defendant could have instituted multiple reasonable accommodations

without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and regular testing.

47. Defendant never explained why Plaintiff could not be accommodated.

48. Defendant never explained why no accommodations could have worked.

49. Due to his termination, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith; and Plaintiff will continue to suffer in the future.

50. Plaintiff has been denied employment, placed in financial distress, suffered a loss of earnings and benefits, suffered a loss of health insurance coverage, and suffered a loss of and impairment of their earning capacity and ability to work.

51. Defendant's actions were intentional and/or reckless.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### DISPARATE TREATMENT DISCRIMINATION

52. Plaintiff restates the foregoing paragraphs as set forth fully herein.

53. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment

action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees." Tepper v. Potter, 505 F.3d 508, 515 (6th Cir. 2007).

54. Plaintiff espoused religious beliefs and is therefore a member of a protected class.

55. Defendant directly discriminated against Plaintiff by terminating them after they stated their sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

56. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

57. It is undisputed that Plaintiff was qualified for the position.

58. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

59. Plaintiff was terminated and replaced with a person of different religious beliefs.

60. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests and will so suffer in the future.

## COUNT III
## VIOLATION OF ELCRA, MCL 37.2101, *et seq.*
## DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION

61. Plaintiff incorporates the foregoing paragraphs by reference herein.

62. Plaintiff holds sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

63. Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

64. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a *prima facie* case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

65. Defendant directly discriminated against Plaintiff based on termination after the employee espoused sincerely held religious beliefs that conflicted with Defendant's policy.

66. Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

11

67. Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

68. Plaintiff was qualified for the position.

69. Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

70. Plaintiff was terminated and replaced with a person of different religious beliefs.

71. Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's unique sincerely held spiritual beliefs.

72. EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

73. The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

74. Defendant defied the law when it determined that some religious beliefs

12

of its employees were valid and while others were bogus.

75. In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

76. Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination and will so suffer in the future.

**COUNT IV**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**DISABILITY DISCRIMINATION–DISCRIMINATION AND RETALIATION**

77. Plaintiff restates the foregoing paragraphs as set forth fully herein.

78. Plaintiff had a "disability" as defined in 42 U.S.C. § 12102(1).

79. Plaintiff was regarded as having a disability under 42 U.S.C. § 12102(3)(A).

80. Defendant failed to grant Plaintiff a medical accommodation.

81. Defendant was legally required to engage Plaintiff in an interactive process before terminating him.

82. Defendant failed to continually engage in an interactive process with Plaintiff.

83. Defendant discriminated against Plaintiff on account of his "actual or perceived" disability when he was terminated.

84. Defendant's actions were knowing and willful.

85. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

86. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of her earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Reasonable attorney's fees; and

e. Such other relief as in law or equity may pertain.

Respectfully Submitted,

                                                    HURWITZ LAW, PLLC

                                                    /s/ *Noah S. Hurwitz*
                                                    Noah Hurwitz (P74063)
                                                    *Attorney for Plaintiff*
                                                    340 Beakes Street, Suite 125
                                                    Ann Arbor, MI 48103
                                                    (844) 487-9489
Dated: May 23, 2023                       noah@hurwitzlaw.com

# UNITED STATES DISTRICT COURT
# EASETERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CRAIG OSBURN,

    Plaintiff,

v.

TRINITY HEALTH CORPORATION,

    Defendants.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorney for Plaintiff*
340 Beakes Street, Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Craig Osburn ("Plaintiff"), by and through his attorneys Hurwitz Law, PLLC, hereby demand a trial by jury, for all issues so triable.

    Respectfully Submitted,
    HURWITZ LAW, PLLC

    /s/ Noah S. Hurwitz
    Noah Hurwitz (P74063)
    Attorney for Plaintiff

Dated: May 23, 2023